UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


BRENDA WILLIAMSON,

           Plaintiff


v.                                      Civil Action No. 2:09-0615


LOGAN COUNTY COMMISSION and
JEFFERY ROBINETTE and
DEPUTY CARTER (First Name Unknown) and
JOHN DOE,

           Defendants


MEMORANDUM OPINION AND ORDER


           Pending is defendants' motion to dismiss, filed August
11, 2009, to which plaintiff has responded.


I.


           Plaintiff Brenda Williamson is a Logan County, West
Virginia, resident.  The Logan County Commission ("Commission")
is a political subdivision located in Logan County.  The
Commission supervises the Logan County Sheriff's Office
("Sheriff's Office").  Defendants Jeffery Robinette and Deputy
Carter, whose first name does not appear in the complaint, are

Logan County residents employed by the Sheriff's Office.  The
statement of facts that follows are taken from the allegations of
the complaint.

On December 21, 2007, Williamson, her boyfriend Randy
Vinson, and a houseguest, Aida Sloan, were at Williamson's home.
Sloan was on home confinement at the time and residing with
Williamson.  Sloan contacted law enforcement via a 911 call and
alleged that Vinson had choked her.  Deputies Robinette and
Carter, along with an unnamed deputy, responded to the call.
Vinson and Sloan were separated by the deputies, with Williamson
remaining in the kitchen with Sloan during an interview with law
enforcement.

Sloan was cordial and expressed that Williamson was
allowing her to stay at the residence.  After returning from
outside the residence where he had gone for a few minutes,
Robinette returned to the kitchen and questioned Williamson about
a surveillance camera stationed at the front of her home.  From
that point forward, Robinette was verbally abusive to both
Williamson and Sloan, referring to them with derogatory names and
threatening both with incarceration.  Williamson politely asked
Deputy Robinette for his badge number and name.  Deputy Robinette
responded by grabbing Williamson's arms, twisting them behind her

2

back, and handcuffing her.   Deputy Robinette then slammed Williamson's head onto the kitchen table.   He then bent her over, using his knee in her back to slam her chest first into a deep freezer.   Williamson cried out in pain and Deputy Robinette advised her to "quit whining" as he pinned her against the freezer in the presence of Deputy Carter and Sloan.

Sloan asked Deputy Robinette not to hurt Williamson inasmuch as she had back problems and recently underwent heart surgery.   Deputy Robinette continued to pin Williamson against the freezer, after which he and Deputy Carter escorted Williamson outside.   Despite the fact that the outside temperature was very cold, Williamson was required to exit the home in her bare feet and without a coat.   Deputy Robinette pushed her as she was navigating a set of stairs outside the home, in a manner that caused her to fall, at which time her glasses fell from her face. Deputy Carter retrieved the glasses, placed them back on her face, with Deputy Robinette mocking her with words to the effect of "we have a faker here, we have a faker here." (Compl. ¶ 9).

The unidentified deputy asked Williamson if she had ever been in trouble before, to which she respond no.   When that deputy asked if she wished him to contact an ambulance, she replied in the affirmative.   While waiting for the ambulance,

3

Deputy Robinette cursed her and advised he would show her what jail was all about.  After the ambulance arrived, Williamson's handcuffs were removed and she was transported to the hospital.

Williamson did nothing to obstruct the deputies during their investigation.  She was also never advised that she was under arrest.   While lying in her hospital bed, however, Deputy Robinette visited her room and handed her a citation.  She was charged with obstruction and disorderly conduct.

At some time prior to January 1, 2008, Williamson instituted a formal complaint with the Sheriff's Office against the three deputies that visited her home on the night of the aforementioned incident.  At the time this civil action was instituted, the Sheriff's Office had not interviewed her or Sloan concerning the events.  Williamson contends no investigation has been commenced.

On January 1, 2008, Williamson's home was set ablaze while she, Vinson, and Sloan were inside.  The responding fire chief deemed the fire to have been the result of arson.  The Sheriff's Office did not investigate the arson and no arrests have been made.  Six months following the arson, Williamson's car was set on fire.  Again, Williamson asserts the Sheriff's Office

4

has not investigated the matter.  Williamson alleges that the Sheriff's Office, acting directly or indirectly through Deputy Robinette, Deputy Carter and/or the unknown deputy, encouraged the setting of the two fires, which she deems to constitute retaliation against her for instituting her administrative complaint with the Sheriff's Office.  On June 9, 2008, the citation issued to Williamson was dismissed without prejudice by a Logan County magistrate judge on the ground that it had not been reduced to writing.

On June 5, 2009, Williamson instituted this action against the Commission, Deputy Robinette, Deputy Carter, and the unknown deputy as a "John Doe" defendant.  She alleges the following claims:

COUNT ONE -- A claim pursuant to 42 U.S.C. § 1983 arising out of the violation of her Fourth, Eighth, and Fourteenth Amendment rights, along with state law violations arising, without limitation, under West Virginia Code sections 61-2-9(c), 61-2-11, 61-5-28 and 61-5-13, all found in the West Virginia Criminal Code, and West Virginia Constitution, Article I, Section 2, and Article II, Sections 1 and 3.  She specifically alleges (1) the excessive force used by Deputy Robinette, (2) his manufacture of criminal charges against her and his threat of incarceration, (3) the dereliction of duty by Deputy Carter and the unknown deputy, presumably for failing to intervene on her behalf, (4) malicious prosecution by Deputy Robinette, (5) the two acts of arson, and (6) the failure to investigate the administrative complaint against Deputy Robinette or the arsons;

COUNT TWO -- A claim containing the general allegations
and theories alleged in Count One, but further alleging
that the constitutional deprivations Williamson
suffered arose out of a "local governmental policy" of
the Sheriff's Office, of which the Commission was
aware;

COUNT THREE -- A claim for intentional infliction of
emotional distress against Deputy Robinette.

COUNT FOUR -- A claim for vicarious liability against
the Commission under the West Virginia Governmental
Tort Claims Act ("Act") as a result of the actions of
Deputy Robinette, Deputy Carter, and the unknown
deputy; and

COUNT FIVE -- A claim under the Act against the
Commission arising out of the negligent hiring,
retention, training, and supervision of the three
deputies.

On August 11, 2009, defendants moved to dismiss.  They
contend dismissal is appropriate inasmuch as (1) the criminal
statutes under which Williamson claims do not create private
rights of action[1], (2) the force used by Deputy Robinette and
Deputy Carter under the circumstances was objectively reasonable
and, in any event, they are entitled to qualified immunity on the
Fourth Amendment claim, (3) Williamson has not alleged a viable
Eighth Amendment claim, and (4) the claims against the Commission
should be dismissed pursuant to West Virginia Code section
7-14a-4 inasmuch as it is not an entity capable of being sued.

---

[1]In her response to defendants' motion to dismiss,
Williamson clarifies that it was not her intention to state
claims under the referenced West Virginia criminal statutes.  The
court, accordingly, deems defendants' contention to be moot.

6

II.

**A.   Governing Standard for Rule 12(b)(6) Motions**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), <u>overruled on other grounds</u>, <u>Twombly</u>, 127 S. Ct. at 1969)); <u>see also Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ."  <u>Twombly</u>, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u>; <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 (4th Cir. 2008).

7

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." <u>Twombly</u>, 127 S. Ct. at 1965; <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)(noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974; <u>Giarratano</u>, 521 F.3d at 302. The recent decision in <u>Iqbal</u> provides some guidance concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."

8

In keeping with these principles a court
considering a motion to dismiss can choose to begin by
identifying pleadings that, because they are no more
than conclusions, are not entitled to the assumption of
truth.  While legal conclusions can provide the
framework of a complaint, they must be supported by
factual allegations.  When there are well-pleaded
factual allegations, a court should assume their
veracity and then determine whether they plausibly give
rise to an entitlement to relief.

Iqbal,  129 S. Ct. at 1949-50 (citations omitted).

As noted in Iqbal, the Supreme Court has consistently

interpreted the Rule 12(b)(6) standard to require a district

court to "'accept as true all of the factual allegations

contained in the complaint . . . .'"  Erickson, 127 S. Ct. at

2200 (quoting Twombly, 127 S. Ct. at 1965); see also South

Carolina Dept. of Health and Environmental Control v. Commerce

and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting

Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is

additionally required to "draw[] all reasonable . . . inferences

from those facts in the plaintiff's favor . . . ."  Edwards v.

City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Our court of appeals in recent days has both reiterated

the foregoing standards and noted additionally as follows:

Even though the requirements for pleading a proper
complaint are substantially aimed at assuring that the
defendant be given adequate notice of the nature of a
claim being made against him, they also provide
criteria for defining issues for trial and for early
disposition of inappropriate complaints.

9

<u>Francis v. Giacomelli</u>, No. 08-1908, 2009 WL 4348830, at *4 (4th
Cir. Dec. 2, 2009).


B.   Fourth Amendment Claim


        The Fourth Amendment protects "[t]he right of the
people to be secure in their persons . . . against unreasonable .
. . seizures." U.S. Const. amend IV.   Objective reasonableness is
the touchstone for a Fourth Amendment excessive force analysis,
namely, whether an officer knew or should have known that a
particular seizure qualified as excessive.   <u>See</u> <u>Valladares v.</u>
<u>Cordero</u>, 552 F.3d 384, 388-89 (4th Cir. 2009); <u>Rowland v. Perry</u>,
41 F.3d 167, 172 (4th Cir. 1994); <u>see</u> <u>also</u> <u>Graham v. Connor</u>, 490
U.S. 386, 396 (1989).   The test requires "careful attention to
the facts and circumstances of each particular case, including
the severity of the crime at issue, whether the suspect poses an
immediate threat to the safety of the officers or others, and
whether he is actively resisting arrest or attempting to evade
arrest by flight." <u>Id.</u>

        Additionally, inasmuch as "'police officers are often
forced to make split-second judgments -- in circumstances that
are tense, uncertain, and rapidly evolving,' the facts must be
evaluated from the perspective of a reasonable officer on the

scene, and the use of hindsight must be avoided." <u>Waterman v.
Batton</u>, 393 F.3d 471, 476-77 (4th Cir. 2005) (quoting <u>Graham</u>, 490
U.S. at 397) (internal citation omitted); <u>see</u> <u>Elliott v. Leavitt</u>,
99 F.3d 640, 642 (4th Cir. 1996) ("The court's focus should be on
the circumstances at the moment force was used and on the fact
that officers on the beat are not often afforded the luxury of
armchair reflection.").

      Apart from the objective reasonableness standard
governing the viability of the Fourth Amendment claim, the
movants assert they are entitled to qualified immunity on the
claim in any event.  Our court of appeals recently revisited the
qualified immunity standard in <u>Unus v. Kane</u>, 565 F.3d 103, 123
(4th Cir. 2009):

> Law enforcement officers are entitled to plead
> qualified immunity as an affirmative defense in
> lawsuits seeking money damages from them.  <u>See</u> <u>Henry v.
> Purnell</u>, 501 F.3d 374, 376-77 (4th Cir. 2007). The
> qualified immunity defense "shields an officer from
> suit when she makes a decision that, even if
> constitutionally deficient, reasonably misapprehends
> the law governing the circumstances she confronted."
> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198, 125 S.Ct. 596,
> 160 L.Ed.2d 583 (2004).  An officer is protected by
> qualified immunity unless he is shown to have (1)
> violated clearly established law (2) that a reasonable
> officer should have known. <u>See</u> <u>Harlow v. Fitzgerald</u>,
> 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396
> (1982); <u>see also</u> <u>Pearson v. Callahan</u>, --- U.S. ----,
> 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

<u>Id.</u> at 123.

11

Defendants assert Deputy Robinette's and Deputy Carter's actions were justified based upon the following:

> [T]he Deputies entered a home knowing there was a domestic dispute, which are volatile and dangerous situations. The Plaintiff refused to cooperate with the Deputies when they entered the home, as discussed, this was a dangerous situation that the Deputies were in and they had no idea what to expect. A reasonable officer would not think it unlawful to use force to arrest an individual in such a situation. Therefore, Defendant Deputies Robinette and Carter are entitled to qualified immunity regarding Plaintiff's claims that they violated her constitutional rights.

(Defs.' Mot. to Dismiss at 7-8).

According to Williamson's factual allegations, which the court is obliged to credit in their entirety at this point in the case, she was not properly accused of any crime, she posed no threat to the deputies or anyone else, she did not resist the seizure of her person by law enforcement, and at no time did she seek to evade the aggressive effort to incapacitate her.  As a result of asking for Deputy Robinette's name and badge number, Williamson was victimized by an "'unnecessary, gratuitous, and disproportionate'" use of force that resulted in her sustaining serious injuries.  See Valladares, 552 F.3d at 391 (citation omitted).  Accepting Williamson's version of the events, Deputy Robinette violated clearly established law of which a reasonable law enforcement officer should have known.

12

At the same time, Williamson nowhere alleges any objectively unreasonable use of force by Deputy Carter.  Lacking those allegations, there is no basis to impose liability for a Fourth Amendment violation upon Deputy Carter.

Based upon the foregoing discussion, the court ORDERS that defendants' motion to dismiss concerning the Fourth Amendment claim be, and it hereby is, granted as to Deputy Carter and denied as to Deputy Robinette.

C.   Viability of the Eighth Amendment Claim

Defendants assert that Williamson cannot state a viable Eighth Amendment claim.  The entirety of Williamson's response to the challenge appears as follows:

> Plaintiff claims that the Defendants' actions constitute a violation of her Eighth Amendment rights and that her claim concerning the same is just and viable. Plaintiff was "detained" when the police brutality occurred. As such, she was afforded Eighth Amendment protection. It is inappropriate to dismiss the case at this time, pending factual development of this claim.

(Pl.'s Resp. at 6).

One of the principal commentators on civil rights litigation has, based upon Supreme Court precedent, summarized

the various constitutional foundations supporting excessive force claims:

> Government officials may be subject to § 1983 lawsuits
> when they use force to control criminal suspects,
> pretrial detainees, and convicted prisoners. The source
> of the right for claims against these officials depends
> on the plaintiff's status at the time the officials
> used force: the Fourth Amendment applies to arrestees
> and other "seized" individuals and prohibits the use of
> unreasonable force; the Due Process Clause applies to
> pretrial detainees and protects them against "excessive
> force that amounts to punishment"; and the Eighth
> Amendment applies to prisoners and prohibits cruel and
> unusual punishment.

Martin A. Schwartz & Kathryn R. Urbonya, Federal Judicial Center,

Section 1983 Litigation 45 (2nd ed. 2008) (footnotes omitted)

(citing Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v.

Albers, 475 U.S. 312, 318-19 (1986)); see Slade v. Hampton Roads

Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005) ("Although

Slade's complaint stated that he was being punished in violation

of the Eighth Amendment, because Slade was a pretrial detainee

and not a convicted prisoner, the district court properly

determined that Slade's complaint should be analyzed under the

Due Process Clause of the Fourteenth Amendment.").

Inasmuch as there is no allegation that Williamson was

at any time a convicted inmate, there is no basis for a claim of

excessive force in violation of the Eighth Amendment.  The court,

accordingly, ORDERS that defendants' motion to dismiss

14

Williamson's Eighth Amendment claim be, and it hereby is,
granted.


D.    The Commission as an Entity Capable of Being Sued


        The entirety of defendants' argument concerning this
ground for dismissal is as follows:

    The Plaintiff's claims against the Logan County
    Commission must be dismissed because the Logan County
    Commission is not an entity capable of suing and being
    sued. See Beckley v. Crabtree, 189 W. Va. 94 428 S.E.2d
    317 (1993); West Virginia Code § 7-14A-4.

(Memo. in Supp. at 8).  It does not appear that either of the
cited authorities authorize dismissal on a categorical basis.
Inasmuch as defendants have not fully elucidated their rationale
concerning why the cited authorities lead ineluctably to
dismissal, the court declines to address the argument at this
time.


                            III.


        Based upon the foregoing, the court ORDERS that
defendants' motion to dismiss be, and it hereby is, granted
insofar as the Fourth Amendment claims against Deputy Carter, and
the Eighth Amendment claim in its entirety, are concerned, and
denied in all other respects.

                            15

The Clerk is requested to transmit a copy of this written opinion and order to all counsel of record and to any unrepresented parties.

DATED:  December 10, 2009

John T. Copenhaver, Jr.
United States District Judge